JOHN T. WILSON, TX SBN 24008284
john@wilsonlegalgroup.com
WILSON LEGAL GROUP P.C.
16610 Dallas Parkway, Suite 1000
Dallas, Texas 75248
(T) 972-248-8080
(F) 972-248-8088

Attorney for Plaintiff/
Counterclaim Defendant

GLENN T. LITWAK, SBN 91510
glenn@glennlitwak.com
LAW OFFICES OF GLENN T. LITWAK
201 Santa Monica Boulevard, Suite 300
Santa Monica, California 90401
(T): 310-858-5574
(F): 310-207-4180

Local Counsel for Plaintiff/
Counterclaim Defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUZZBALLZ, L.L.C., a Texas Limited Liability Company,<br><br>     Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>BUZZBOX BEVERAGES, INC., a Nevada Corporation; and BENDISTILLERY, INC., an Oregon Corporation, d/b/a BUZZBOX, d/b/a BUZZBOX COCKTAILS, and d/b/a BUZZBOX BEVERAGES,<br><br>     Defendants/Counterclaim Plaintiffs. | Case No.: 5:14-cv-01725<br><br>DISPUTED PROPOSED JURY INSTRUCTIONS<br><br>Pre-Trial Conference: April 4, 2016<br>Time: 2:30 PM<br>Judge: Hon. Virginia A. Phillips<br>Courtroom: 780<br><br>**[JURY TRIAL DEMANDED]**<br><br>Complaint Filed: August 20, 2014<br>Jury Trial: April 12, 2016 at 8:30 a.m. |

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** Plaintiff/Counterclaim Defendant BUZZBALLZ, L.L.C. ("BUZZBALLZ") and Defendants/Counterclaim Plaintiffs BUZZBOX BEVERAGES, INC. ("BUZZBOX") and BENDISTILLERY, INC. D/B/A BUZZBOX, D/B/A BUZZBOX COCKTAILS, AND D/B/A BUZZBOX BEVERAGES ("BENDISTILLERY") and, pursuant to Local Rule 51-1 and the Court's Civil Trial Scheduling Order (ECF Doc. No. 31), and file this Disputed Proposed Jury Instruction.

The parties reserve the right to propose new instructions, to withdraw proposed instructions, and to modify their proposed special verdict forms based upon, *inter alia*, the Court's rulings at trial and the evidence introduced at trial.

**DATED**: March 28, 2016.

| | |
|---|---|
| Respectfully submitted,<br>**WILSON LEGAL GROUP P.C.** | **SLOVAK BARON EMPEY<br>MURPHY & PINKNEY LLP** |
| By: /s/John T. Wilson<br>    John T. Wilson<br>    State Bar No. 24008284<br>    16610 Dallas Parkway, Suite 1000<br>    Dallas, Texas 75248<br>    (T) 972.248.8080<br>    (F) 972.248.8088<br>    (E) eservice@wilsonlegalgroup.com | By: /s/Shaun M. Murphy<br>    Shaun M. Murphy<br>    State Bar No. 194965<br>    1800 E. Tahquitz Canyon Way<br>    Palm Springs, CA 92262<br>    (T) 760.322.2275<br>    (F) 760.322.2107<br>    (E) murphy@sbemp.com |
| **ATTORNEY FOR PLAINTIFF** | **ATTORNEY FOR DEFENDANTS** |

## TABLE OF CONTENTS

| Party | Title | Source | Page |
|---|---|---|---|
| Plaintiff's Instruction | Infringement – Likelihood of Confusion – Factors – *Sleekcraft* Test | Ninth Circuit Model Civil Jury Instruction 15.16 (bracketed language included) | 1 |
| Plaintiff's Instruction | Infringement – Likelihood of Confusion – Factor – Strength [Distinctiveness] of Trademark | Ninth Circuit Model Civil Jury Instruction 15.17 (applicable bracketed language included) | 3 |
| Joint | Arguments Opposing and Supporting Instructions | | 6 |

**COURT'S INSTRUCTION NO. \_\_\_\_\_**

You must consider whether the defendants' use of the trademark is likely to cause confusion about the source of the plaintiff's or the defendants' goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1.  <u>Strength or Weakness of the Plaintiff's Mark</u>. The more the consuming public recognizes the plaintiff's trademark as an indication of origin of the plaintiff's goods, the more likely it is that consumers would be confused about the source of the defendants' goods if the defendants use a similar mark.

2.  <u>Defendants' Use of the Mark</u>. If the defendants and plaintiff use their trademarks on the same, related, or complementary kinds of goods there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.  <u>Similarity of Plaintiff's and Defendants' Marks</u>. If the overall impression created by the plaintiff's trademark in the marketplace is similar to that created by the defendants' trademark in appearance, sound, or meaning, there is a greater chance that consumers are likely to be confused by defendants' use of a mark. Similarities in appearance, sound or meaning weigh more heavily than differences in finding the marks are similar.

4.  <u>Actual Confusion</u>. If use by the defendants of the plaintiff's trademark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion did not occur, the defendants' use of the trademark may still be likely to cause confusion. As you consider whether the trademark used by the defendants creates for consumers a likelihood of confusion with the plaintiff's trademark, you should weigh any instances of actual confusion against the opportunities for such confusion. If the instances of actual confusion have been relatively frequent, you may find that there has been substantial actual confusion. If, by contrast, there is a very large volume of sales, but only a few isolated instances of actual confusion you may find that there has not been substantial actual confusion.

5.  <u>Defendants' Intent</u>. Knowing use by defendants of the plaintiff's trademark to identify similar goods may strongly show an intent to derive benefit from the reputation of the plaintiff's mark, suggesting an intent to

cause a likelihood of confusion. On the other hand, even in the absence of proof that the defendants acted knowingly, the use of plaintiff's trademark to identify similar goods may indicate a likelihood of confusion.

6. <u>Marketing/Advertising Channels</u>. If the plaintiff's and defendants' goods are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion.

7. <u>Consumer's Degree of Care</u>. The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be. They may be less likely to be confused by similarities in the plaintiff's and defendants' trademarks.

8. <u>Product Line Expansion</u>. When the parties' products differ, you may consider how likely the plaintiff is to begin selling the products for which the defendants are using the plaintiff's trademark. If there is a strong possibility of expanding into the other party's market, there is a greater likelihood of confusion.

# COURT'S INSTRUCTION NO. \_\_\_\_\_

## Strength as a Likelihood of Confusion Factor

How distinctively a trademark indicates that a good comes from a specific source even if unknown is an important factor to consider in Instruction [insert number of instruction regarding likelihood of confusion, e.g., 15.16] for determining whether the trademarks used by the defendants creates for consumers a likelihood of confusion with the plaintiff's marks.

The plaintiff asserts that its use of the term "BuzzBallz" and of a graphic incorporating the term "BuzzBallz" are trademarks for its ready-to-drink alcoholic cocktails. The plaintiff contends the defendants' use of similar words in connection with the defendants' ready-to-drink alcoholic cocktails infringes plaintiff's trademarks and is likely to cause confusion about the origin of goods associated with those trademarks.

## Spectrum of Marks

Trademark law provides great protection to distinctive or strong trademarks. Conversely, trademarks not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses. Trademarks that are not distinctive are not entitled to any trademark protection. For deciding trademark protectability, trademarks are grouped into four categories according to their relative distinctiveness. These four categories are, in order of strength or distinctiveness: arbitrary, suggestive, descriptive and generic names.

**Arbitrary Marks**. The first category is "inherently distinctive" trademarks. They are considered strong trademarks and are clearly protectable. They involve the arbitrary, fanciful, or fictitious use of a word or phrase to designate the source of a product. Such a trademark is a word that in no way describes or has any relevance to the particular product it is meant to identify. It may be a common word used in an unfamiliar way. It may be a newly created (coined) word or parts of common words that are applied in a fanciful, fictitious, or unfamiliar way, solely to function as a trademark.

For instance, the common word "apple" became a strong and inherently distinctive trademark when used by a company to identify the personal computers that company sold. The company's use of the word "apple" was arbitrary or fanciful because "apple" did not describe and was not related to what the computer was, its components, ingredients, quality, or characteristics. "Apple" was being used in an arbitrary way to designate for consumers that the computer comes from a particular manufacturer or source.

**Suggestive Marks**. The next category is suggestive marks. These trademarks are also inherently distinctive but are considered weaker than arbitrary trademarks. Unlike arbitrary trademarks, which are in no way related to what the product is or its

3

components, quality, or characteristics, suggestive trademarks suggest some characteristic or quality of the product to which they are attached. If the consumer must use imagination or any type of multi-stage reasoning to understand the trademark's significance, then the trademark does not describe the product's features, but suggests them.

A suggestive use of a word involves consumers associating the qualities the word suggests to the product to which the word is attached. For example, when "apple" is used not to indicate a certain company's computers, but rather "Apple–A–Day" Vitamins, it is being used as a suggestive trademark. "Apple" does not describe what the vitamins are. However, consumers may come to associate the healthfulness of "an apple a day keeping the doctor away" with the supposed benefits of taking "Apple–A–Day" Vitamins.

**Descriptive Marks**. The third category is descriptive trademarks. These marks directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed in a straightforward way that requires no exercise of imagination to be understood.

For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product comes from, or the name of the person who makes or sells the product. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.

**Generic Names**. The fourth category is entitled to no protection at all. They are called generic names and they refer to a general name of the product, as opposed to the plaintiff's brand for that product. Generic names are part of our common language that we need to identify all such similar products. A generic name is a name for the product on which it appears.

If the primary significance of the alleged mark is to name the type of product rather than the manufacturer, the term is a generic name and cannot be a valid trademark. If the majority of relevant consumers would understand the term to name the type of product rather than the manufacturer, the primary significance of the term is generic and not entitled to protection as a trademark.

Clearly, the word apple can be used as a generic name and not be entitled to any trademark protection. This occurs when the word is used to identify the fruit from any apple tree.

The computer maker who uses the word "apple" as a trademark to identify its personal computer, or the vitamin maker who uses that word as a trademark on vitamins, has no claim for trademark infringement against the grocer who used that same word to indicate the fruit sold in a store. As used by the grocer, the word is generic

4

and does not indicate any particular source of the product. As applied to the fruit, "apple" is simply a commonly used name for what is being sold.

**Secondary Meaning and Mark Strength**

If you determine a trademark is weak—that is, suggestive or descriptive, you must consider the recognition that the mark has among prospective consumers. This market recognition is called the trademark's "secondary meaning."

A term acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is. You must find that the preponderance of the evidence shows that a significant number of the consuming public associates the term "BuzzBallz" with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether the term "BuzzBallz" has acquired a secondary meaning, consider the following factors:

1. <u>Consumer Perception</u>. Whether the people who purchase the product that bears the claimed trademark associate the trademark with the owner;

2. <u>Advertisement</u>. To what degree and in what manner the owner may have advertised under the claimed trademark;

3. <u>Demonstrated Utility</u>. Whether the owner successfully used this trademark to increase the sales of its product;

4. <u>Extent of Use</u>. The length of time and manner in which the owner used the claimed trademark;

5. <u>Exclusivity</u>. Whether the owner's use of the claimed trademark was exclusive;

6. <u>Copying</u>. Whether the defendants intentionally copied the owner's trademark; and

7. <u>Actual Confusion</u>. Whether the defendants' use of the plaintiff's trademark has led to actual confusion among a significant number of consumers.

If a suggestive trademark has such secondary meaning, it becomes stronger. If it has developed no secondary meaning, it remains a weak trademark.

# ARGUMENTS OPPOSING AND SUPPORTING INSTRUCTIONS

**A. PLAINTIFF'S PROPOSED INSTRUCTION NO. 15.16 – INFRINGEMENT – LIKELIHOOD OF CONFUSION – FACTOR – *SLEEKCRAFT* TEST**

1. <u>Defendants' Opposition</u>. Defendants request the addition of further instruction regarding the issue of a "crowded field." Specifically, Defendants contend that the following language should be added either to numbered paragraph 3 or the following instruction related to Secondary Meaning/Strength of Mark: "When performing the 'similarity of the trademarks' analysis, you must consider the relevant trademarks as they appear in full in the marketplace. The popularity of a particular trademark-related term may impact the strength of any trademark using that term. That is, where a crowded trademark field is hemmed in on all sides by similar trademarks terms on similar goods, the ability of any trademark owner to prevent the use by others of the similar term is relatively weak. Where there are several products in the marketplace using a particular trademarked word, such use indicates the difficulty in avoiding its use and the likelihood that consumers will *not* be confused by its use." Such an instruction is appropriate and supported by *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1147-50 (9th Cir. 1999), judging similarity by reference to the marks' appearance, sound, and meaning. *Dreamwerks Prod. Group v. SKG Studio,* 142 F.3d 1127, 1131 (9th Cir. 1998); *PostX Corp. v. docSpace Co., Inc.,* 80 F. Supp. 2d 1056, 1061 (N.D. Cal. 1999) (Whyte, J.) (citations omitted); see also *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). *Halo Mgmt., LLC*

*v. Interland, Inc.*, (D.C. N.D. Ca. 2013) 308 F.Supp.2d 1019, 1034. Plaintiff contends that the language is not included in the Model Instructions, but this issue not applicable in every infringement case. On a case-by-case basis, the instruction would be given when appropriate, as it is here.

   2.   <u>Plaintiff's Support</u>.  Defendants' proposed additional language as to a "crowded field" is unnecessary and redundant.  The Model Instructions did not include such language even as an option to be applied on a case-by-case basis.  *See* Model Instruction §§ 15.16 & 15.17.  Thus, the Ninth Circuit arguably did not regard such language as necessary.  The lack of necessity of such language arises, in part, from its redundancy given that the Model Instructions already instruct jurors to consider the exclusivity of a plaintiff's use of its mark in determining the strength of the mark.  *See id.*  Accordingly, Plaintiff maintains that the proposed instruction, based upon the Model Instructions, is complete and requires no additional language.

**B.  PLAINTIFF'S PROPOSED INSTRUCTION NO. 15.17 – INFRINGEMENT – LIKELIHOOD OF CONFUSION – FACTOR – STRENGTH [DISTINCTIVENESS] OF TRADEMARK**

   3.   <u>Defendants' Opposition</u>.  Defendants object to Plaintiff's proposed jury instruction no. 15.17 to the extent Plaintiff's proposed jury instruction no. 15.17 excludes the following language to the prejudice of Defendants:  "The presence or absence of any particular factor should not necessarily resolve whether Plaintiff's trademark has acquired secondary meaning.  Descriptive marks are protectable only to the extent you find they acquire distinctiveness through secondary meaning.  Descriptive

marks are entitled to protection only as broad as the secondary meaning they have acquired, if any. If they have acquired no secondary meaning, they are entitled to no protection and cannot be considered a valid mark. The Plaintiff has the burden of proving that the Plaintiff's trademark has acquired a secondary meaning. The defendant has the burden of proving that the Plaintiff's trademark lacks secondary meaning."

4. Defendants object to the inclusion of the instruction regarding secondary meaning. As identified by the court in its ruling on the parties' respective motions for summary judgment, Plaintiff has not identified any evidence from which a finding of secondary meaning could be found. Therefore, it is inappropriate to include an instruction on this issue. Furthermore, as discussed above, the inclusion of an instruction regarding "crowded field" relative to the strength of mark analysis may be added here.

5. <u>Plaintiff's Support</u>. As regards Defendants' initial objection to allegedly excluded language, the language that Defendants claim is excluded is not required to be included by the Model Instructions. *See* Model Instructions § 15.17 (2007). Specifically, Model Instruction § 15.17 provides that the "second and third unnumbered paragraphs as well as numbered paragraphs one through eight of Instruction 15.10" are to be inserted in Instruction 15.17. *Id.* The language that Defendants' claim Plaintiff excludes to Defendants' prejudice is not included within the second and third unnumbered paragraph or numbered paragraphs one through eight of Instruction 15.10; however, such language is properly included in Agreed Proposed Instruction No. 15.10.

1. Accordingly, there is no prejudice to Defendants and no need to include such language in Plaintiff's Proposed Instruction No. 15.17.

      6.     The instruction on secondary meaning is appropriate in that, regardless of the evidence presented in the summary judgment motions, Plaintiff may yet present evidence sufficient for a jury to find in favor of Plaintiff on the issue of secondary meaning. As secondary meaning is relevant to the issue of the strength of the mark and Plaintiff is not foreclosed from seeking a finding of secondary meaning, the instruction should be included.

      7.     Defendants' proposed additional language as to a "crowded field" is unnecessary and redundant. The Model Instructions did not include such language even as an option to be applied on a case-by-case basis. *See* Model Instruction §§ 15.16 & 15.17. Thus, the Ninth Circuit arguably did not regard such language as necessary. The lack of necessity of such language arises, in part, from its redundancy given that the Model Instructions already instruct jurors to consider the exclusivity of a plaintiff's use of its mark in determining the strength of the mark. *See id.* Accordingly, Plaintiff maintains that the proposed instruction, based upon the Model Instructions, is complete and requires no additional language.